CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

March 14, 2024
LAURA A. AUSTIN, CLERK
BY: /s/T. Taylor
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **DOMINIQUE HERMAN ADAMS,** | ) | |
| Plaintiff, | ) | Case No. 7:21cv00392 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **PAUL MOORE,** | ) | By:  Pamela Meade Sargent |
| Defendant. | ) | United States Magistrate Judge |

Dominique Herman Adams, ("Adams"), a Virginia Department of Corrections, ("VDOC"), inmate proceeding pro se, filed a complaint under 42 U.S.C. § 1983, alleging violation of his Eighth Amendment rights by Dr. Paul Moore's deliberate indifference in providing dental care from January 30, 2018, through March 13, 2018.  Dr. Paul Moore, ("Dr. Moore"), has filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), (Docket Item No. 46) ("Motion to Dismiss"), to which plaintiff has responded, (Docket Item No. 50) (Plntf's Mot. For Resp. to Def. Mot. To Dismiss).  Plaintiff also has filed a motion to file a supplemental pleading, (Docket Item No. 54), and a motion to file an amended pleading. (Docket Item No. 55) (collectively, "Motions to Amend").  Following notice pursuant to 28 U.S.C. § 636(c), all parties filed written consent to the exercise of jurisdiction in this case by a magistrate judge.  Thereafter, pursuant to court order, (Docket Item No. 50), the case was transferred to the undersigned magistrate judge to handle the proceedings herein, including dispositive orders, pursuant to 28 U.S.C. § 636(c)(1).  Upon review of the pleadings, the court will grant the Motion to Dismiss and deny the Motions to Amend.[1]

---

[1] Plaintiff's motion to supplement his pleadings seeks to add co-defendants to the suit, but any claim against the co-defendants is not viable because the two-year statute of

## I. Background

According to his Complaint, Adams submitted an emergency grievance requesting treatment for severe toothache, causing pain in both the left and right sides of his upper jaw. The chart notes for January 30, 2018, provided as Exhibit B to the Complaint by Adams, indicate that Adams had severe decay in teeth numbers 2, 4, 12, 13 and 14. (Ex. B, Docket Item No. 1-1 at 15.) Dr. Moore filled the cavities on the two teeth on the top right side that day, according to Adams's Complaint. Dr. Moore's notes reflect that the prognosis for teeth numbers 12, 13 and 14, was questionable, and that Adams was to return for further treatment on those teeth. ( Ex. B, Docket Item No. 1-1 at 15.) Adams was charged $5.00 for the dental services rendered that day, although he alleges that he should not have been required to pay for emergency treatment, under VDOC Operating Procedure, ("OP"), 866.1, part VII(E)(5).

On March 13, 2018, according to the Complaint, Adams returned to see Dr. Moore after filing an emergency grievance alleging pain in his upper left jaw. Dr. Moore filled the teeth on the upper left side that day. (Ex. C, Docket Item No. 1-1 at 16.) On July 30, 2018, another dentist repaired a broken filling in tooth number 14. (Ex. D, Docket Item No. 1-1 at 17.) According to Dr. Moore's Memorandum (which Adams has not disputed on this point), Dr. Moore had retired before July 30, 2018. (Mem. in Supp. of Mot. to Dismiss at 2, Docket Item No. 47.) Adams does not allege any further treatment by Dr. Moore after March 13, 2018.

---

limitations expired more than three years ago. Plaintiff also seeks to bring an additional claim against the dentist who replaced Dr. Moore, alleging ongoing dental issues with the same teeth, but that matter is properly the subject of a different suit, if Adams chooses to file suit on that claim, and cannot properly be joined with Adams's case against Moore. *See* FED. R. CIV. P. 20.

On January 29, 2019, Adams filed a lawsuit in this court against Dr. Moore, alleging that he had suffered from extreme pain for six weeks and a day because of Dr. Moore's failure to fill the cavities in his top left jaw when he first saw him on January 30, 2018. *See Adams v. Moore*, No. 7:19cv00066 (W.D. Va.) Dr. Moore filed a motion to dismiss for failure to state a claim and failure to exhaust administrative remedies. (No. 7:19cv00066 at Docket Item No. 17.) Thereafter, Adams moved for voluntary dismissal of his complaint, which the court granted on May 29, 2019. (No. 7:19cv00066 at Docket Items No. 22 and 24.) Adams filed the current suit against Dr. Moore on July 1, 2021,[2] more than three years after Moore last treated him.

## II. Discussion

A motion to dismiss under Rule 12(b)(6) takes facts alleged by the plaintiff as true and determines whether those facts support a claim for which the defendant could be liable. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The motion should be granted only if the plaintiff is not entitled to judgment on the facts alleged, as a matter of law. The motion does not resolve factual disputes between the parties or the merits of the case. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

As Dr. Moore contends in his Motion to Dismiss, it is clear from the face of Adams's complaint that this suit was filed after the statute of limitations had run. The limitations period for suits filed under § 1983 is determined by the state statute of limitations for personal injury torts where the claim arises. *See Wallace v. Kato*,

---

[2] Dr. Moore states that Adams's first suit was filed January 31, 2019, and the current suit was filed July 6, 2021, which are the dates they were received in the Clerk's Office. However, for incarcerated pro se prisoners, a pleading is filed when delivered to the prison authorities for mailing. *See Houston v. Lack*, 487 U.S. 266, 276 (1988). The postmark on Adams's first complaint was January 29, 2019, and July 1, 2021, on the current complaint.

3

549 U.S. 384, 387 (2007). In Virginia, that limitations period is two years. *See* VA. CODE ANN. § 8.01-243(A). The accrual date of a § 1983 cause of action, however, is a question of law that is not resolved by reference to state law. *See Wallace*, 549 U.S. at 388. Under federal law, a cause of action accrues when "a plaintiff know[s] that he has been hurt and who inflicted the injury." *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (citing *United States v. Kubrick*, 444 U.S. 111, 122–24 (1979)).

Adams's Complaint alleges continued pain from January 30, 2018, through March 13, 2018, six weeks and one day, because Dr. Moore did not fill the cavities in his upper left jaw on January 30, 2018. At the latest, as soon as the pain went away after treatment on March 13, 2018, Adams was aware that the pain would have been relieved earlier if treated by Dr. Moore in January. Thus, I find, from the facts alleged in the Complaint, that Adams's cause of action accrued by March 13, 2018, at the latest. Two years from that date was March 13, 2020.

Adams filed his first lawsuit against Dr. Moore on January 29, 2019. After Dr. Moore filed a motion to dismiss, Adams requested voluntarily dismissal without prejudice, which was granted on May 29, 2019. While that case was pending, 120 days, the statute of limitations was tolled. *See* VA. CODE ANN. § 8.01-229(E)(1). When the first case was dismissed without prejudice, with no ruling on the merits, under Virginia law, Adams could refile his suit "within six months from the date of the order entered by the court, or within the original period of limitations, . . . whichever period is longer." VA. CODE ANN. § 8.01-229(E)(3). Six months from the date of the dismissal order was November 29, 2019; the original period of limitations ending March 13, 2020, extended by the 120 days his first suit was pending, expired on July 11, 2020. Adams did not file the present suit until July 1, 2021, almost a full year later. The suit is, therefore, untimely.

In response to the Motion to Dismiss, Adams argues that he was incapacitated by intellectual and mental health disabilities, thereby tolling the statute of limitations under Virginia Code Annotated § 8.01-229(A)(2)(b).[3]  However, Adams did not allege this incapacity in his Complaint,[4] rendering the Complaint untimely on its face. Instead, he argued this incapacity in his Opposition to Moore's Motion to Dismiss, referring to exhibits filed with a previously denied motion to support his claim.

Normally, a court does not consider evidence and exhibits when ruling on a motion to dismiss. To do so, the court must treat the motion to dismiss as a motion for summary judgment and give both parties a reasonable opportunity to present evidence. FED. R. CIV. P. 12(d). Because the court has ruled that the case is untimely on the face of the Complaint, the court will not treat the motion to dismiss as a motion for summary judgment.

If the court were to consider the exhibits, or allow the plaintiff to amend to add these exhibits to his Complaint, they would be insufficient to show that Adams was incapacitated for any period of time. Adams argues that his intelligence is in the low range of average, noting that although the Mental Health Services Progress

---

[3] Adams amended his Complaint on August 12, 2022, to allege that the statute of limitations was tolled until one year after his release from prison under Virginia Code Annotated § 8.01-229(A)(3). (Docket Item No. 11.)  That code provision only applies to suits filed by a prisoner against his committee. A committee is someone appointed by the court to handle legal actions by and against a prisoner's estate. See VA. CODE ANN. § 53.1-221. It has no relevance to the statute of limitations for lawsuits against state employees under § 1983. See Gilreath v. Manager of Va. Corr. Enters., 977 F.2d 572 (4th Cir. 1992) (unpublished).

[4] On July 10, 2023, Adams filed another Motion for Leave to Amend, alleging that he was incapacitated under Virginia Code Annotated § 8.01-229(A)(2)(b). (Docket Item No. 40.)  The court denied that motion without prejudice when it severed Adams's suit into three separate actions, stating that "it is unclear to which of the claims his new allegations are related," but noting that Adams could file another motion to amend in the proper case.

Note dated June 25, 2015 (Docket Item No. 40-1), found him to be of average intelligence, he tested as "retarded" in 2003, citing an exhibit filed in *Adams v. Watson*, No. 7:10cv00383 (W.D. Va.). The cited exhibit in that case actually states that Adams was *not* mentally retarded, calling him "borderline at most," and the testing doctor for the defense "could not testify that [Adams] lacked the capacity to make a voluntary and knowing waiver." (*Adams v. Watson*, 7:10cv00383, Ex. H, Docket Item No. 1-4 at 10.)

Adams also claims to suffer from PTSD, allegedly diagnosed by Mattie E. Wright, M.Ed., ("Wright"), on June 30, 2015. However, Wright's report of June 30, 2015, states that Adams "reports PTSD symptoms due to [canine attack] incident reported in May. He appeared stable currently, with no affective symptoms of distress noted." (Docket Item No. 37-1 at 1.) Wright administered a Personality Inventory Assessment test but made no recommendations for treatment. (Docket Item No. 37-1 at 1.)

The next note in Adam's mental health exhibit is dated August 26, 2022. Psychology associate R. Gilly, Jr., M.Ed., ("Gilly"), observed that Adams had pressured speech, and Adams self-reported anxiety, agitation and tension. Gilly checked the box under assessment, which said, "[s]ome clinically significant symptoms of thought or mood disorder or other signs of mental disorder observed." In the comments, he stated:

> Inmate Adams was seen in the Pod Office (4), for a requested visit concerning his mental health and well-being. Adams presented alert, aware, [dysthymic], with pressured voice; evidencing no suicidal, homicidal, or self-harm ideations. He was logical, linear in thought and focus, in command of rational cognitions; ruminated the elements of the "Facility Request" concerning current symptoms possibly consequential of an incident that occurred on May 20, 2014, generating extreme anxiety.

> Symptoms are transient chest pains, nightmares, lack of focus.

(Docket Item No. 37-1 at 6.) Adams was then referred to psychiatrist, Dr. Everett McDuffie, M.D., ("Dr. McDuffie"), for an appointment. On September 6, 2022, Dr. McDuffie noted that Adams's appearance was appropriate, his psychomotor activity within normal limits, no abnormal movements, fluent speech and linear thought processes. He described Adams's mood as anxious, and his judgment, impulse control, and insight as fair. He diagnosed generalized anxiety disorder and possible personality disorder. He prescribed a trial of Prozac (20 mg.) for 30 days. (Docket Item No. 37-1 at 7.)

Citing *McEvily v. K-Mart Corp.*, 73 Va. Cir. 51, 2007 WL 6013007, at *3 (Fairfax Cir. Ct. Feb. 28, 2007), Adams asserts that an incapacitated person is one who has a "mental or physical condition which renders him, either wholly or partially, incapable of taking care of himself or his estate." (Plntf's Mot. For Resp. to Def. Mot. To Dismiss at 11.) Even using that definition, the evidence offered by Adams does not show that he is in any way incapable of taking care of himself or his property.

In the absence of a definition of incapacity in Virginia Code Annotated § 8.01-229, state and federal courts in Virginia have looked to the Code chapter which defines the criteria for appointment of a committee or trustee. *See Sisk v. Commonwealth*, 56 Va. Cir. 230, WL 34038010, at *2 (Charlottesville Cir. Ct. June 15, 2001); *Kumar v. The Glidden Co.*, No. 2:05cv499, 2006 WL 1049174, at *5 (E.D. Va. Apr. 13, 2006). In that chapter, "incapacitated person" is defined as:

> … [A]n adult who has been found by a court to be incapable of receiving and evaluating information effectively or responding to people, events, or environments to such an extent that the individual lacks the capacity to (i) meet the essential requirements for his

7

> health, care, safety, or therapeutic needs without the assistance or protection of a guardian or (ii) manage property or financial affairs or provide for his or her support . . . without the assistance or protection of a conservator.

VA. CODE ANN. § 64.2-2000. Adams has not introduced any evidence that he has been found incompetent by a court of competent jurisdiction.

Considering the above definition, the court in *Kumar* found that the plaintiff failed to establish her incapacity even though she had a history of mental illness (including four brief hospitalizations) and alcoholism, was receiving Social Security disability benefits, and was required by the Social Security Administration to have a payee manage her benefits because of her history of alcoholism. *See* 2006 WL 1049174, at *8. The court, focusing on her history of employment prior to disability, her success in Alcoholics Anonymous, her purchase of her own home, and raising a child as a single mother, found that the plaintiff had capacity to understand her rights and to file suit within the time limit. *See Kumar*, 2006 WL 1049174. at *9.

Adams's evidence is far less compelling than the plaintiff in *Kumar*. He has no evidence of intellectual impairment, falling in the average range. In June 2015, Wright reported that he had no mental health diagnoses at that time. He did not request further psychological evaluation until August 2022, more than a year after the current suit was filed. There is no evidence of mental incapacity between March 2018 and June 29, 2021, when he filed the present suit. Accordingly, even if admitted, the medical exhibits would not support his claim of incapacity to toll the statute of limitations.

## III. Conclusion

For the reasons stated, Adams's claim is untimely. The court will grant Dr. Moore's Motion to Dismiss and dismiss the claim with prejudice. Plaintiff's Motions to Amend will be denied. An appropriate order will be entered this day.

**ENTERED:** March 14, 2024.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE